UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

UNITED STATES OF AMERICA      )
           )
v.                        )      No. 2:19-CR-122
           )
LAZARO ADRIAN QUINTANA MARTINEZ )

**MEMORANDUM AND ORDER**

The defendant has pled guilty to conspiring to commit bank fraud and aggravated identity theft (Count One) and to committing aggravated identity theft (Count 7). [Doc. 19]. He is presently set for sentencing on May 27, 2021.

The United States Probation Office has prepared and disclosed its Presentence Investigation Report ("PSR") [doc. 25], to which the defendant filed four objections [doc. 31]. The United States has responded to the objections [doc. 40] and the probation office has issued a PSR Addendum and a Revised PSR [docs. 37, 38].

Additionally, on March 4, 2021, the Court ordered the parties to file supplemental briefing in light of the Sixth Circuit Court of Appeals' March 3, 2021 ruling in *United States v. Riccardi*, 989 F.3d 476 (6th Cir. 2021). [Doc. 45]. The United States complied with that order of the Court. [Doc. 46]. The defense did not.

The defendant's objections are now ripe for the Court's consideration. As explained below, the objections will be sustained in part and overruled in part.

I.

*Background*

The Court's summary of the defendant's conduct in this case is taken from his plea
agreement.

> In November 2017, multiple law enforcement agencies in the Eastern District
> of Tennessee began investigating a series of connected, fraudulent access
> device uses by the same individuals. The offenses mainly took place in
> Kingsport, Bristol, and Johnson City, Tennessee. Law enforcement quickly
> identified Martinez as the suspect because the same car was spotted at many
> of the theft locations—a black Nissan Rogue with Florida tag APK M52.
> Law enforcement records showed Courtesy Nissan of Tampa owned that car.
> When contacted, the dealership provided a copy of a rental agreement
> showing defendant rented the vehicle on November 7, 2017, and he was
> supposed to return the vehicle on November 9, 2017. At the time of the rental,
> defendant provided his Florida driver's license, proof of auto insurance, and
> a Wells Fargo debit card. The defendant's driver's license photo showed he
> was the same person in surveillance videos collected during the investigation.

> Defendant did not return the car. On December 5, 2017, Courtesy Nissan
> used GPS tracking to locate the car and recovered the abandoned car less
> than a mile from their Tampa location. Dealership personnel (without law
> enforcement contact or involvement) searched the car and located an
> abandoned SanDisk Cruzer Glide 32GB thumb drive inside the car. The
> dealership sent the thumb drive to the Secret Service Knoxville office, and
> pursuant to a federal search warrant, a search of the drive took place. The
> Court-authorized search revealed 279 unique account numbers, including the
> account numbers used in the Eastern District of Tennessee. 39 of the account
> numbers were ECU account numbers.

> The conspiracy lasted between at least November 7, 2017 (when defendant
> rented the vehicle described above), and December 5, 2017 (the last-known
> fraudulent transaction in the Eastern District of Tennessee). Defendant and
> Person A would obtain the active bank accounts and account card numbers
> of unknowing victims, re-encode gift cards or other cards with magnetic
> strips, and either make direct ATM withdrawals, or purchase real gift cards
> along with other goods at registers of local businesses. Defendant and Person
> A predominately targeted Eastman Credit Union ("ECU") account holders in
> the Eastern District of Tennessee. ECU is a federally-insured financial
> institution. Defendant and person A predominately executed their scheme at

2

Walgreens stores throughout the Eastern District of Tennessee, but the two also conducted fraudulent transactions at Kroger, CVS, Walmart, and a shopping mall ATM in the Johnson City Mall. Each fraudulent transaction was an overt act that advanced or helped the conspiracy.

. . .

As a result of the fraudulent acts by defendant and Person A, ECU suffered a financial loss of $21,444.47, and Discover Card suffered a financial loss of $270.00.

[Doc. 19, p. 3-5].  The defendant's legal address is in Tampa, Florida.  [Doc. 25, p. 3].  As noted above, his driver's license is issued by the State of Florida.

## II.

### *Objection One*

The PSR sets a base offense level of six pursuant to United States Sentencing Commission Guidelines Manual ("U.S.S.G.") §§ 2B1.1(a)(2) and 2X1.1(a).  [Doc. 25, ¶ 24].  The PSR then increases the offense level by 10, pursuant to U.S.S.G. § 2B1.1(b)(1)(F), for a loss amount of more than $150,000.00 but not more than $250,000.00.  [Doc. 25, ¶ 25].  That increase relies in large part on Application Note 3F(i) of § 2B1.1, which instructs that "[i]n a case involving any counterfeit access device or unauthorized access device, loss includes any unauthorized charges made with the counterfeit access device or unauthorized access device *and shall be not less than $500 per access device*." [Doc. 25, ¶ 19] (emphasis added).  The defendant objects that his loss amount should instead be based on the lesser figures mentioned in his plea agreement ("ECU suffered a financial loss of $21,444.47, and Discover Card suffered a financial loss of $270.00.").

3

In *Riccardi*, the Sixth Circuit held that Application Note 3F(i)'s "$500 minimum loss amount for gift cards does not fall within the bounds of reasonable interpretation of § 2B1.1's text" and thus should no longer be utilized by sentencing courts. 989 F.3d at 489 (quotations omitted). In its response to the Court's supplemental briefing order, the United States concedes that *Riccardi* "reduces the loss calculation in the presentence report." [Doc. 46]. The United States thus "suggests that the actual loss figures contained in the plea agreement are the best evidence of loss in this case." [*Id.*].

Having considered *Riccardi*, the Court agrees with the United States' concession. The defendant's first objection will be sustained. His base offense level will be increased by four, rather than by ten, pursuant to U.S.S.G. § 2B1.1(b)(1)(C), to reflect a loss of more than $15,000.00 but not more than $40,000.00.

III.

*Objection Two*

The PSR assigned two criminal history points for a sentence imposed in the United States District Court for the Northern District of Alabama. [Doc. 25, ¶ 40]. The defendant objects that he should not receive criminal history points for that conviction because it was relevant conduct to the instant conspiracy. In its PSR Addendum, the probation office agrees. The two challenged criminal history points are not applied in the Revised PSR. The defendant's second objection will be sustained.

4

## IV.

## *Objection Three*

The PSR increases the base offense level by two pursuant to U.S.S.G. § 2B1.1(b)(10)(C). [Doc. 25, ¶ 27]. That guideline is to be applied "[i]f (A) the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials; (B) a substantial part of a fraudulent scheme was committed from outside the United States; or (C) the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means[.]" Reading this increase as relating to the prior Alabama conviction, the defendant objects. That reading is overly narrow, and the objection will be overruled.

In *United States v. Shifu Lin*, the Sixth Circuit held that guideline 2B1.1(b)(10)(C) had been properly applied in that access device fraud case. 508 F. App'x 398 (6th Cir. 2012). In *Shifu Lin*,

> Defendants purchased credit-card numbers over the internet from Ukraine and Russia before encoding them on used gift cards. Next, they traveled to the Midwest, far from their home states. They used the re-encoded gift cards to travel from Meijer store to Meijer store, purchasing gift cards at self-checkout lanes, before moving on to new stores in order to evade detection. Once re-encoded, cards could be used like cash and there was no identifying information on the face of the card that would indicate that it contained a fraudulent credit-card number. While it may be true that individual steps in Defendants' conspiracy were not complicated, given the cross-jurisdictional conduct and technical knowledge necessary to commit the offense, the district court did not clearly err in concluding that the conspiracy as a whole reflected the use of sophisticated means.

*Id.* at 403.

As in *Shifu Lin*, the instant defendant traveled to upper East Tennessee, far from his home in Tampa, to execute a scheme involving stolen access devices. He moved from store to store, undoubtedly to evade detection. "[G]iven the cross-jurisdictional conduct and technical knowledge necessary to commit the offense," guideline 2B1.1(b)(10) has been correctly applied in this case. The defendant's third objection will be overruled.

V.

*Objection Four*

Lastly, the defendant objects that his PSR does not address concurrent sentencing with the related Alabama conviction. The probation office has now noted that issue in the PSR Addendum and the Revised PSR. As an objection, the issue is therefore moot. The Court will address this point further, in the context of a request for downward departure pursuant to U.S.S.G. § 5K2.23, at sentencing.

VI.

*Conclusion*

As provided herein, the defendant's first and second objections to his PSR are **SUSTAINED**, his third objection is **OVERRULED**, and his fourth objection is **OVERRULED AS MOOT**. [Doc. 31].

At present, the Revised PSR calculates the defendant's *total* offense level for Count One as 17, including a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. Because his base offense level will now be increased by only four, rather than ten, under guideline 2B1.1(b)(1), the *adjusted* offense level falls from 20 to 14. Because that number has dropped below 16, the defendant is now entitled to only a two-

6

level reduction for acceptance of responsibility.  *See* U.S.S.G. § 3E1.1(b).  His total offense

level is now 12 and his criminal history category is I, resulting in an advisory guideline

range for Count One of 10 to 16 months, before any consideration of a downward departure

under guideline 5K2.23.  With the 24-month mandatory consecutive sentence on Count 7,

the defendant's effective total guideline range is 34 to 40 months.

Absent further order of the Court, sentencing remains set for 10:30 a.m. on May 27,

2021, in Knoxville.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge

7